J. W. STEPHENSON, COUNTY JUDGE, ET AL. v. UNION SEATING COMPANY.

Decided March 22, 1901.

**School Funds—Debt for Furniture—Mandamus.**

Where, under the provisions of the statute, warrants were issued for furniture purchased for school districts, payable out of the school funds apportioned to such districts for certain years, and an order was duly entered setting apart 25 per cent of the fund apportioned for those years for the payment of the warrants, and the holders thereof failed to enforce their payment out of the funds for such years, but stood by while the school officers appropriated such funds to other demands, they can not by mandamus compel the payment of the warrants out of the funds appropriated to such districts for subsequent years. Rev. Stats., arts. 3984, 3959.

Appeal from Shelby. Tried below before Hon. Tom C. Davis.

*D. M. Short & Sons,* for appellants.

*Bryarly & Polley* and *Drury Field,* for appellee.

GILL, ASSOCIATE JUSTICE.—The Union Seating Company, a private corporation of the State of Michigan, incorporated for the purpose of manufacturing and selling school furniture, instituted this suit in the District Court of Shelby County against the appellant, J. W. Stephenson, as county judge of Shelby County and ex officio superintendent of public schools for the county; John T. Norris, the treasurer, the several county commissioners, and the county itself, alleging, in substance, that it is the owner by purchase of certain school warrants, thirty-four in number, thirty of which were issued to the Globe Furniture Company and four to Beal & Daniels, a partnership. That the warrants were issued by the trustees of certain school districts, and approved by the county judge as superintendent of public schools. They were so issued in 1896, payable September 1, 1896, 1897, 1898, and 1899, and amounted in the aggregate to $3247.87. That the contracts for the sale of the furniture were legally executed, and the several sums were severally set apart by the superintendent out of the school fund belonging to said districts for the years named,—said sums being less than 25 per cent per year of the fund apportioned to said districts. That the furniture had been duly delivered and accepted, and demand had been

made upon the treasurer for the payment of each of said warrants and he had refused to pay any of them. That there is in the hands of the treasurer $30,000 of the available school fund, unappropriated and unapportioned, belonging to the various school districts. Plaintiff prayed for mandamus to compel the treasurer to pay the warrants sued on, and to compel the county judge to set aside so much of the apportionment for the years 1900 and 1901 of the money belonging to the various school districts as will be sufficient to pay off the warrants and accrued interest. Alternative prayers were made, but it is not necessary for the purposes of this opinion that they be stated.

Defendants excepted to the petition upon various grounds, and answered by general and special denial. They also averred that no funds were in the hands of the treasurer to the credit of any of said school districts, which had not lawfully been apportioned to other just and legal demands at the time the furniture contracts were made. It was fruther alleged that if any funds had ever been in the treasurer's hands subject to the plaintiff's demands, they had long since been paid out on other legal demands, and plaintiff, by waiting until they were so paid out, had lost its right to the writs.

All demurrers were overruled, and upon trial before the court without a jury, judgment was rendered granting the writs of mandamus against the county judge and treasurer, and adjudging the costs against the county of Shelby.

The legal effect of this judgment is to subject to the payment of the warrants in question funds subject to be set apart to the various districts for years subsequent to those for which the warrants were drawn, and against which the warrants were not drawn.

It was shown upon the trial that each of the warrants sued on were issued by the trustees of the particular district for which the furniture was purchased, and were approved by the superintendent of public schools after the delivery and acceptance of the furniture. That the superintendent entered an order, in a book kept for the purpose, setting aside for the payment of the warrants 25 per cent of the funds apportioned or to be apportioned to the districts for the years 1896, 1897, 1898, and 1899, and that this sum would have been sufficient to pay the claims as they fell due, but it was not shown that the attention of the treasurer was called to the order. The warrants were drawn against the funds to be apportioned to the several districts, and were drawn and the order entered prior to the employment of teachers for the years named, and prior to the fixing of other liability against the funds.

The warrants were shown to have been assigned to appellee, and that demand was made upon the treasurer for their payment, and that payment was refused because no funds had been appropriated for the purpose.

It is agreed that at the date of the filing of the suit there was of available school fund in the hands of the treasurer $30,000, and that no

part of it had been apportioned to any of the districts in question. It was also shown that none of the moneys theretofore appropriated for the running of the schools or for the payment of the warrants were in the hands of the treasurer, but it clearly appeared that all of the moneys so apportioned had been previously paid out on apparently legal demands. This suit was filed on the 16th day of May, 1900.

Article 3959 of the Revised Civil Statutes provides, among other things, that in employing teachers the trustees shall not create a deficiency debt against their district. Article 3984 provides for the erection of schoolhouses and the purchase of furniture, but expressly limits the expenditure to 25 per cent of the fund of the district for a period of five years. Article 3985 authorizes the trustees to apply to the county superintendent for permission to build a schoolhouse or buy furniture when necessary. Article 3986 prescribes the powers and duties of the superintendent in such matters. In article 3989 the 25 per cent limitation is again repeated.

We have already seen that 25 per cent of the funds apportioned to the various districts for the fiscal years beginning September 1, 1896, September 1, 1897, September 1, 1898, and September 1, 1899, had been regularly set apart for the payment of the warrants issued for the purchase of the furniture.

Appellants urge many objections against the manner in which the liability was created, and contend that the warrants are void. It is unnecessary to state the nature of these objections, or to set out the form of the contracts and warrants. We are of opinion they are in substantial compliance with the statute, and the furniture having been delivered and accepted, the holder of the warrants was entitled to be paid out of the funds apportioned to the various districts for the years named. Appellee failed to enforce their payment out of those funds, but stood by while the officials appropriated the entire apportionment for those years to other demands. It is now sought to make these warrants a charge against the funds apportioned to the various districts for subsequent years.

Recurring to the articles of the statute cited above, we find that by article 3959 trustees of school districts are forbidden to create deficiency debts against the district. In other words, the term of the school must end when the fund apportioned to it for the particular year is for any reason exhausted. The only exception to this restriction is found in article 3984, whereby the trustees, with the consent and approval of the superintendent, are permitted to erect schoolhouses and to purchase furniture, using therefor not more than 25 per cent of the funds of the district for each year for a period of not more than five years. The erection of schoolhouses and purchase of furniture is thus made possible, and at the same time the school funds are protected against the possibility of improvidence or extravagance on the part of the officers charged with its disbursement.

By limiting the appropriation to 25 per cent, the maintenance of a school for at least a part of each year is assured. To allow the construc-

tion contended for by appellee would permit the school funds for subsequent years to be entirely consumed in deficiency debts improvidently created in previous years, and would result in an entire suspension of the public school until the deficiency was paid. It is clear to our minds that the law contemplates the maintenance of a public school for at least a part of each year, and we can not place a construction upon the law which might defeat its chief purpose. In Collier v. Peacock, 93 Texas, 255, it is held that a warrant for a teacher's salary in excess of the sum apportioned to the district for the year can not be made a charge upon the fund of a subsequent year. Article 3959 was construed as a limitation upon the power of the trustees to contract any debt which would cause a deficiency in the school fund of the district. While the article applies alone to contracts for teachers' salaries, we think the construction placed upon it by the Supreme Court applies with equal force to the articles controlling the purchase of school furniture. The powers of the trustees and the superintendent are limited in terms equally explicit.

If we are correct in this, then it follows that no legal duty rested either upon the superintendent or the treasurer to appropriate any of the funds in question to the payment of these claims, and mandamus will not lie except to enforce the performance of a duty imposed by law and ministerial in its nature. Arberry v. Beavers, 6 Texas, 457.

There were no funds which the superintendent could lawfully appropriate for the purpose, and the treasurer could disburse no part of the fund until an appropriation was made. It appears that in each of the years for which the warrants were drawn the districts in question had been apportioned their pro rata share of the available school fund. To 25 per cent of this for each year the appellee was clearly entitled. This suit could be maintained against the treasurer only in case the funds or a part of them were in his hands, and when appellee discovered that they were about to be misappropriated, a suit of this nature should have been promptly brought. It is held in Kentucky that the officer wrongfully paying out funds to which a party is entitled is responsible personally for the money thus misappropriated. Wilson v. Hite, 54 S. W. Rep., 726. And perhaps the remedy of appellee in this case is a suit against such officers as wrongfully disposed of the funds appropriated to the payment of its claims. The question of misjoinder of parties need not be noticed.

We are of opinion the court erred in awarding the writs. The facts being undisputed as to the nature of the fund now on hand and necessarily affected by the decree, the judgment of the trial court is reversed and judgment is here rendered for appellants.

*Reversed and rendered.*